UNITED STATES of America

v.

**BIOMETRIC AFFILIATED RESEARCH LABORATORIES, INC. and Lidia Vazquez, Defendants.**

No. 79 Cr. 735–CSH.

United States District Court, S. D. New York.

Feb. 26, 1980.

---

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Following a jury trial, defendants Biometric Affiliated Research Laboratories, Inc. ("Biometric") and Lidia Vazquez were convicted on 75 counts of filing false claims and mail fraud, in violation of 18 U.S.C. §§ 287 and 1341. The two defendants, corporate and individual, are now awaiting sentence.

The defendants were represented jointly at the trial by Sidney Sparrow, Esq. Ms. Vazquez did not testify at the trial. Testimony was given by Bernard Halpert, the President of Biometric. Halpert was not named as a defendant in the captioned indictment, but he has been indicted for tax evasion arising out of the operations of Biometric which formed, in substantial part, the subject matter of the evidence in the captioned trial. Halpert is awaiting trial on the tax evasion charges before Judge Stewart.

Before the trial of the instant indictment commenced, the Court conducted a hearing to determine whether there was a potential conflict of interest between the corporate defendant and Ms. Vazquez; and to advise the defendants (Ms. Vazquez and the corporation in the form of Halpert, its President) of the advantages of separate representation. At the end of that hearing, having inquired into the circumstances and questioned Ms. Vazquez and Halpert, the Court was satisfied that there was no obstacle to those individuals' expressed preference for joint representation by Mr. Sparrow. The cases which informed the Court's inquiry include *United States v. DeFillipo*, 590 F.2d 1228 (2d Cir. 1979); *United States v. Carrigan*, 543 F.2d 1053 (2d Cir. 1976); *United States v. Mari*, 526 F.2d 117 (2d Cir. 1975); *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973); and *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Nothing occurred during the course of trial which indicated the presence of any conflict of interest between Ms. Vazquez on the one hand, and Biometric (and Halpert) on the other.

Sidney G. Sparrow, Kew Gardens, for defendants.

Robert B. Fiske, Jr., U. S. Atty., New York City, for United States; Robert S. Litt, Asst. U. S. Atty., New York City, of counsel.

However, within the present context of sentencing, the Government quite properly raises the question of a potential conflict. That conflict arises out of the interface between Halpert's pending trial for tax evasion before Judge Stewart, and the pending sentencing of Vazquez under the captioned indictment. The prosecutor has made known his desire to obtain the cooperation of Ms. Vazquez as a witness against Halpert in the tax evasion trial. Such cooperation, if requested by the Government and given by Ms. Vazquez, would be a legitimate factor in Ms. Vazquez's favor, to be called to the attention of this Court at the time of sentencing. (In saying that, I of course intimate no view as to the effect which cooperation would have upon determination of the sentence; I merely observe that I would be bound to consider it.) But the question that naturally arises is whether Mr. Sparrow, representing Biometric, Mr. Halpert's corporation, as well as Ms. Vazquez, and by his own admission upon friendly and sympathetic terms with both Ms. Vazquez and Halpert, could with propriety advise Ms. Vazquez upon the desirability (viewed solely from her own interests) of cooperating with the Government against Halpert in the tax evasion trial.

At a further hearing convened to consider this situation, Ms. Vazquez stated that she continued to prefer to be represented by Mr. Sparrow, and saw no need for separate representation and advice on this point. She also pointed out that Mr. Sparrow is fully familiar with her situation and background, and is thus an appropriate spokesman on her behalf at the sentencing.

Trial counsel for Halpert in the tax evasion case (not Mr. Sparrow, but a different attorney) viewed the Government's raising the issue as an attempt to drive a wedge between Ms. Vazquez and Halpert, to the disadvantage of Halpert during the tax evasion trial.

The prosecutor cheerfully acknowledged that objective, but saw nothing wrong with it; and reiterated the Government's view that, in these particular circumstances, Ms. Vazquez was entitled to separate, independent representation on the question of extending or withholding her cooperation in respect of the Halpert prosecution.

The Second Circuit, in the cited cases, has expressed a continuing concern with joint representation of defendants in criminal cases. That concern may arise in connection with a plea of guilty, *Mari, supra,* or on the trial, *Carrigan, supra.* I know of no case involving the post-trial, sentencing process; but the essential source of concern is potential conflict between the defendants, not the stage in the proceedings when that conflict manifests itself. Each case necessarily turns upon its own circumstances. In the case at bar, I have concluded that it is not appropriate for Mr. Sparrow to advise Ms. Vazquez in connection with her sentencing, and that, notwithstanding Ms. Vazquez's own stated preferences (which cannot always control), separate counsel must be appointed to advise her on the question of cooperation.

It appears unlikely that Ms. Vazquez could qualify for the appointment of counsel under the Criminal Justice Act. On the other hand, there is something inappropriate about requiring her to pay for legal counsel which she proclaims she does not want.

In these circumstances, the Court has appointed Gary P. Naftalis, Esq., a respected and experienced member of the criminal defense bar, to represent Ms. Vazquez in this regard. Mr. Naftalis has kindly agreed to undertake this representation *pro bono publico.* Mr. Naftalis's first function will be to confer with the prosecutor, Robert S. Litt, Esq., as soon as possible, in order to ascertain with precision the nature of the cooperation which the Government seeks to obtain from Ms. Vazquez. Mr. Naftalis will then communicate with Ms. Vazquez, with a view towards advising her on the nature of the cooperation which the Government seeks, and the desirability or lack of desirability (entirely as Mr. Naftalis assesses it) of Ms. Vazquez giving such cooperation. Ms. Vazquez's address, according to the presentence report, is 104–40 Queens Boulevard, Apt. 7–Y, Forest Hills, New York.

Mr. Naftalis may also arrange a meeting with Ms. Vazquez through Mr. Sparrow, although of course Mr. Naftalis's consultation with Ms. Vazquez should be one-on-one. In saying that, it is not my intention to reflect adversely in any way upon the integrity of Mr. Sparrow, for whom I have developed a high regard. It is simply to ensure that the principle of entirely separate and independent legal advice, which I regard as essential in these circumstances, be fully implemented. Mr. Naftalis's brief, it will be appreciated, is a relatively narrow one. After he has performed his function, there is no reason why Mr. Sparrow may not speak for Ms. Vazquez at the time of her sentencing.

While I cannot compel her to do so, I urge most strongly upon Ms. Vazquez the wisdom of consulting with Mr. Naftalis when the latter is in a position to do so, and of weighing carefully whatever advice Mr. Naftalis may consider it appropriate to give her.

Counsel will proceed in a manner consistent with this opinion.

It is So Ordered.